Our second case for today is 2018-50646, City of Austin v. Ken Paxton, et al. Thank you, Judge Elrod, and may it please the Court. Lenora Pettid on behalf of Appellants The City of Austin in this case is seeking an advisory opinion under the guise of an ex parte young injunction. Specifically, the City has asked the Federal Courts to enjoin Texas' Attorney General from enforcing a preemption provision that he has no specific duty or demonstrated intent of ever enforcing. The District Court allowed the claim to proceed on the grounds that General Paxton has broad enforcement powers under the state constitution and has periodically sought to enforce other unrelated laws in the past. The law clearly establishes that this was error. In fact, ex parte young itself demonstrates why this is not an appropriate ex parte young case. Edward Young was Minnesota's Attorney General who, like General Paxton, had broad enforcement powers under state constitutional and statutory law. The Supreme Court looked at those powers, as well as the principles behind the Eleventh Amendment and its own precedent, and concluded that the mere possession of such executive authority could not waive sovereign immunity or there would be no sovereign immunity left. Instead, the Court found that there was jurisdiction in that case only because there was an ongoing violation of federal law in the form of an actual or threatened enforcement proceeding. So the problem here is, from your perspective, is not that he doesn't have the power. It's that he hasn't demonstrated any intent to use that power. Is that correct? Yes, Your Honor. And if he were to go and give a press conference, hypothetically, that said this is wrong and this needs to change and Texas is not going to stand for this, you know, something like that, would that, would that then be enough? That would certainly change the analysis, Your Honor, and that was the case in the Nijgen case that we cited in our brief where there were specific statements in the public expressing an intent to enforce. So if I, let me just understand your response to Judge Elrod. You're conceding that General Paxton has the authority to institute litigation with respect to, I guess, for lack of a better term, the supremacy of state law over the city of Austin ordinance. You concede that? Yes, Your Honor. And he's done that with respect to other similar controversies in the past? He has instituted preemption lawsuits on occasion in the past. I would not concede that they were similar to this one. Okay. All right. So you concede that. I get, I get that. But the reason you're saying there's no Ex parte Young, you know, it's not met here, is that he hasn't shown any intent to do that with respect to this housing ordinance. He hasn't filed a lawsuit. He hasn't had a press conference, as Judge Elrod said. That's, that's the argument with respect to Ex parte Young? Yes, Your Honor. And under this, the city of Austin cites two cases from the Supreme Court to demonstrate why there was sufficient intent for or threat of lawsuit here to establish not only the connection requirement for Ex parte Young, but a case in controversy requirement for Article 3. Those are the Steffel and the Susan B. Anthony cases. And those, I think, provide a good framework to establish why this case should have been dismissed. So here's my question. You just hit on it. Where, what, it seems like we're bleeding into the ripeness part of standing when we start talking about, well, he hasn't done anything to threaten them, it's not immediately impending. Yes, Your Honor. Is, is, is this more of a standing case than an Ex parte Young case? I'm just struggling with that. I mean, if, if it's a standing case, we have to address that, right? Because it's jurisdictional. Yes, Your Honor. It is both a standing case and an Ex parte Young case. In fact, that's how the court, the court discussed that in the en banc opinion in Oak because there was no actual or threatened enforcement proceeding. There was no Ex parte Young connection, but a clear majority held that there was no standing. Now, so do you, would, so does Attorney General Paxton and your other client, the, are you, do you also represent the Texas Workforce Commission? Yes, ma'am. Do, do they have any objection to we, to us analyzing this understanding under that jurisprudence? No, Your Honor. We'd be happy for you to dismiss the case under either jurisdictional defect. So, well, we would have to analyze whether or not they, they have actually stated a claim that is viable at this point. Is it premature? I'm not sure I understand Your Honor's question. You do need to ana, analyze whether there is jurisdiction in this case. Right. Because, because there is, it's premature. There's no, they're not harmed at, at this point. Yes, Your Honor. They're not harmed at this point. That is a separate jurisdictional problem with this case. Is that why you refer to it as an advisory opinion? Yes, ma'am. That there, the problem in, in going back to the cases to which they rely on the, on Steffel and Susan B. Anthony. The Supreme Court has held in those cases that there are three general requirements that the, for a plaintiff to establish standing, ripeness, and an ex parte young issue. One is that they have engaged in a constitutionally protected activity. Second is that that activity falls within a compulsory prescription that is enforceable by these particular defendants. And the third is that there is no actual, that the threat of enforcement is in the words of the Supreme Court, not chimerical. They have failed to establish any of those three prongs, although the focus of the briefing is the third. Is there a precedent, either from the Supreme Court or our court, that says we're required to resolve the Article III standing issue before the ex parte young issue? Not of which I'm aware. But generally speaking, you may, you may resolve jurisdictional defects in the order that the court sees fit. Okay. So, you can pick. So, do you, is, so are you in agreement with the scholars, I guess Professor Chimerinsky among others, that says that we used to talk more about this in ex parte young, this type of problem, but that in the, in the 20th century, as the standing doctrines became more developed, we tend to look at these problems through those lenses? Is that, are you, you may not want to comment on that. I'm not familiar with Professor Chimerinsky's article to which you are referring. Generally speaking, the court has dealt with them in two different contexts. Most ex parte young cases that are more current tend to be in the context of an administrative scheme in the Air Evac case, for example, whereas this is a straight preemption case, which is not an ex parte young, a traditional ex parte young claim for a number of problems, mainly being that preemption is not enforced as this case, as this court has normally defined that term to mean compulsion or constraint. And while Austin is undoubtedly constrained in their ability to enforce their preferred housing ordinance, it is not constrained by a particular state actor. They are constrained by the language of the statute, which declares their ordinance void. And they're not compelled in the sense of the cases that they cite, because the cases like Susan B. Anthony and Steffel involve often criminal, but at least civil or administrative penalties. And so as a result, there's a true compulsion, which does not exist in 250%. In Oak Pahlobi, in the plurality opinion, we said ex parte young, you have to have, the official has to have some connection and a demonstrated willingness to enforce. Is it your understanding that our circuit law has adopted that view, or is that still just a plurality view of Oak Pahlobi? Specifically the demonstrated willingness part? So the demonstrated willingness was a plurality as it applied to the Attorney General on Oak Pahlobi. The court has, however, adopted that standard as it applies to governors in Morris v. Livingston. You think Morris v. Livingston, that's a whole part of the holding of the court that Yes. Because we've said in other panel opinions, both before and after Morris, that Oak Pahlobi is a plurality that's not binding. But I've read Morris, and we say that. Yes. So in the case, the panel opinions to which I think Your Honor is referring typically do not involve state executive officials of the level of a governor or an attorney general. I'm thinking of KP. KP involved a state board with the specific duty to enforce an administrative scheme, as opposed to a governor or an attorney general who has broad enforcement powers. The closest on-point case is Morris, and under this court's rule of orally willingness as it was described in the United States v. Williams in 1982, the court is in fact bound by the reasoning not just the holding in Morris v. Livingston, and the same principles apply between a governor and an attorney general. What would you say to someone who says, well, Verizon jettisons all of our circuit precedent, because Verizon doesn't focus at all on this issue? So I would point, Your Honor, to Justice, I'm assuming that the comment in Verizon to which you're referring is the simple examination. Straightforward inquiry. Yes. Thank you. So I would point the court first to Justice Kennedy's concurrence in that case, which explained that can be deceptively simple in cases that are unlike Verizon, where there was a specific enforcement order that was under review. As this court recognized just two years ago, well after Verizon and Air Evac, that in fact the question turns on nuances of the complaint, including the defendant and the alleged conduct. Here the defendant is different. He is an attorney general with broad enforcement powers. The conduct is also different in the fact that there really is no conduct on the part of the attorney general. So going back to sort of higher levels about what ex parte young injunctions actually require may be the best way to examine the question. An ex parte young injunction, if you give Austin what they ask for, doesn't require General Paxton to go through and pull out Section 250.7 out of every copy of every code book in the state of Texas. Instead it simply orders him not to enforce, which they interpret to mean bring a preemption claim against the city of Austin. He is already not doing that. So the court's order would be for him to continue not doing something he's already not doing and that would have no impact. The court doesn't have jurisdiction to order those under any normal circumstances and it certainly doesn't have, under the standing doctrines that we discussed earlier, and it certainly doesn't have any jurisdiction to do so in the case of a claim against a public official that is entitled to sovereign immunity unless he's actively violating federal law. So Austin needs to stand at the ready in case he decides to do something? Is that your position? My primary response to that is that preemption is not typically an affirmative claim. As the Supreme Court recognized first in Armstrong v. Exceptional Child Care and more recently in Murphy v. NCAA, preemption is almost always raised as an affirmative defense. Austin has the choice of when it wants to enforce its regulation and a landlord would be the one who would normally raise the preemption claim and General Paxton either could or could not in his discretion decide to intervene. And so this is not a circumstance like the cases that they cite in their brief where they are standing at the risk of some sort of fine or criminal penalty. The worst thing that's going to happen is that they're going to litigate the preemption claim in a claim that they have chosen to bring as an enforcement matter and frankly they brought it amongst themselves about bringing this premature claim against General Paxton. For that reason we suggest this case should have been dismissed. Do you have anything else? Not unless you have any other questions. Thank you. May I please the court? Patricia Lange, Assistant City Attorney here on behalf of the City of Austin. The Attorney General's argument boils down to this. In order for us to trigger Ex parte Young we have to violate state law and see what the Attorney General does or we have to do nothing and see what the Attorney General does. And either situation is untenable in the face of a constitutional state law that violates our rights and it undermines the purpose of Ex parte Young. Well if your concern is about what the Attorney General may or may not do, and I get that, he hasn't done anything, he hasn't threatened to do anything, why is this lawsuit ripe? It is ripe because the city has been injured and we would be, part of our injury would be redressed by a decision of the court. I understand how your injury may be concrete. Your law might or might not be invalidated. But how is it impending? Doesn't the injury have to be immediately or imminently impending? The threat of enforcement when we're talking about it as a standing perspective is will we have a personal outcome and personal stake in the outcome of the case. And in this we will. Additionally, I'd point the court to the recent Second Circuit opinion, Tweed, New Haven, Airport Authority, where they actually brought a case against their Attorney General for a state statute that was limiting how long the airport's runway could be. And in that case they did not raise Ex parte Young, but they did raise standing as an issue. And the court said the fact that that state law is directed at that particular entity is coercive. It is a threat of enforcement without having to wait for the Attorney General to take an affirmative step. Because in that case the Attorney General also made the same argument that this Attorney General is making. Do you agree that we have a choice as to whether we pursue this under the Ex parte Young framework or the standing framework? No, Your Honor. We believe this needs to be decided under Ex parte Young as this is an interlocutory appeal and the standing issue would come later. The cases that have been cited by the Attorney General where they address standing and Ex parte Young traditionally are cases where they have, the plaintiffs have been dismissed completely. So had Judge Sparks dismissed our case entirely, then we would be bringing all of those issues before you. But if you were successful, then they could move tomorrow that you don't have standing and then they would have to wait. They have already moved that we do not have standing. So they have to wait. That would be, the Judge Sparks could rule on that and then everybody would wait. Yes. And he has ruled already on standing and agreed that the city does have standing. They can't bring it. Because they did not bring it as part of their appeal. However, if the court feels that these items are, these two issues are so inextricably intertwined, we would ask for an opportunity to fully brief the standing issue as we have Why are you not, why don't you lose because of Morris? Morris, so the cases cited by the Attorney General focus on situations where there is another state agency or private individuals who have an established cause of action. The cases that the Attorney General relies on require, or find Morris in particular, the governor was initially sued by the pro se individual. The district court realized that the suit was being brought under the TDCJ statutes and that the executive director actually has responsibility. So the district court substituted the governor for, or the executive director for the governor and said that the governor didn't have any affirmative steps or do anything that would trigger it. This would, this case would be different if there was a separate state agency responsible for enforcing preemption, which there is not. This would also be different if it established a private cause of action, just as in Oklahoma where there was a private tort action. We don't have any of those circumstances here. And in those cases, the circuit has looked at, we already have someone who is responsible and so the Attorney General can't be brought in just because we already have somebody who is responsible. They would have to take an affirmative step. The closest you get to that actually would be the summit medical case out of the Ninth Circuit where the Attorney General in that case issued direction to the district attorneys about how to interpret the criminal statute. Do you agree that under our circuit precedent and, I mean, I guess under the Supreme Court's case itself, there has to be some connection of the state official you've sued to enforcement of the challenge statute? Yes, we do agree there has to be some connection. All right. Leave aside, you know, whether Oak Pahlobi's demonstrated willingness thing is part of our circuit law. I assume that you agree with me that there's nothing in the statute itself that points to the Attorney General, that gives the Attorney General enforcement authority, right?  The statute is silent. The statute is silent. So just try to articulate for me your argument on what is the enforcement connection here. The Attorney General himself has taken the position in multiple cases involving the city of Austin that it is his duty to uphold and enforce the supremacy of state law. Okay, so his position that he's taken in other, I assume, unrelated litigation doesn't have to do with this statute. They are not on point to, they are not specifically directed at this statute, but they address the issue of preemption, and that is why they are similar to the case. The Texas v. Travis County being kind of an outlier as that was a pre-enforcement suit. In this situation, the Zatari case, which is a short-term metals case, is brought on the basis of preemption. The Texas Association of Businesses, which is a case currently going through the courts, the state courts, for preemption under the Texas Minimum Wage Act, where we've adopted a paid sick leave ordinance. And in those cases, the Attorney General is taking the position that this is his responsibility. I haven't reviewed those, but can you tell me what the basis of the Attorney General's argument is that he has that responsibility? Is his general duty to enforce state law? Is that where the Attorney General is saying he gets the right to do this? Yes. On page 4 of Appendix 1, we've included their second intervention in the Zatari case, where they say Texas, through the Attorney General, has a duty to uphold and enforce the Constitution against the city when it acts in violation of the law. Now, doesn't that create—it's interesting, because, I mean, I take that—I mean, I think that's a good argument. But doesn't it run into our precedents that say the generalized duty of a state official to enforce laws isn't enough to create that enforcement connection? It does not run afoul of that because the courts in those situations or in those examples, there is someone else who's either responsible, another state official, or there's a private cause of action. This is a rare case where we have a state law that regulates municipalities that is silent on who is responsible for enforcing. So if you take the Attorney General's position, there is no one at the state level that can enforce a law that directly regulates my client. I don't think they're saying the Attorney General can't enforce. They're saying that the Attorney General hasn't shown an indication to enforce. They're not saying there's no one who could—I believe they believe the Attorney General can very well enforce should he choose to do so. So that's different. You don't automatically get someone to sue. So it doesn't have to be a substitute board or a substitute. You don't automatically get that in every ex parte young. And FITS itself, FITS from 1899, they didn't have—the defendants were not about to commit some specific act, and that was the problem with FITS. An ex parte young followed FITS, didn't abrogate FITS, but said they had already commenced enforcement proceedings. So this whole idea that you have to be on the edge of doing something and you have to have shown some intent is part of the Supreme Court's jurisprudence from ex parte young all the way through. It doesn't say you automatically get someone to sue, and if it's not the AG, it's the board or the commission. Respectfully, Your Honor, the ex parte young I actually think supports our position in this case more than it supports the Attorney General's. In that case, the enforcement happened after the district court had already issued an injunction. It came before the Supreme Court on a habeas petition because he was already found in contempt for violating the court's injunction. And the language of ex parte young says that—declared that the Attorney General under his powers existing at common law, the virtue of the various statutes, had a general duty imposed upon him, which includes the right and the power to enforce the statutes of the state, including, of course, the act in question. And he had already commenced enforcement proceedings, though. After the injunction had already been issued. So that's how it—because of the way that it came to the court, he hadn't started the enforcement proceedings before the district court issued its injunction. So that, to me, would be the difference. You're saying he started it after—started enforcement after and he was held in contempt, and that's why the case was there on habeas? Yes. Before you filed suit, was there any communication with the Attorney General as to whether there would be any action taken with respect to enforcement? No. And this statute also—so the city passed its ordinance, and then a week later a bill was filed at the state legislature directly focused on the city's ordinance. And it actually has, you may not adopt and you cannot enforce. So we have a law on the books that we're not allowed to enforce because the state statute that we believe violates the Fair Housing Act and the Supremacy Clause is invalid. And so we should be able to enforce our ordinance. How would an injunction be written in this case were you to prevail? You were able to bring a lawsuit against the Attorney General under Ex parte Young. How would the injunction be written? In this case, actually, we— And the reason—just to give you background, the counsel on the other side was saying, well, he's not doing anything. So what would an injunction say? Keep doing nothing. I realize Judge Sparks' opinion or order discusses injunction. We'd actually ask for a declaration at this point with additional relief if needed. But at this point, we'd be asking for a declaration that this particular law is invalid. And a declaration is appropriate under Ex parte in a pre-enforcement challenge. So you believe we have the authority in this interlocutory appeal to give you a declaration that Judge Sparks didn't give you? We're not just ruling on the injunction? All we have done at this point is do the motions to dismiss. That is all that Judge Sparks has heard. You don't believe that—so you don't want that from us. You just want us to say that it doesn't lose because of Ex parte Young. Correct. So you can argue to Judge Sparks about what you really need from him. Yes, ma'am. Yes, Your Honor. Because what he gave you is not good enough. What he gave us was a decision that the Attorney General's immunity is waived, and therefore we may proceed on our case. So we would ask the court to affirm that decision of Judge Sparks so that we may proceed and have our day in court on this. I have questions, though, about other circuits' case law. I don't see which circuits would support your view. And I just want to make sure that you agree that—like you didn't agree on Ex parte Young, and that's very helpful. But with regard to the Third Circuit, the Third Circuit in the West Co. Corp. case, the secretary and the AG had a general duty to uphold the laws in that case, but no evidence in the record showed that there was a realistic likelihood that they were going to do it then in that particular case. And so the court held that they did not allow the case to proceed, and the AG got immunity. Yes, Your Honor. That would actually be consistent with my position that— How is that consistent? Because there's no evidence in the record that the AG is going forward here. Because in West Co., the statute said that the enforcement responsibility lie with the school district, not with the Attorney General. Well, actually, the court held that the AG did have a general duty to uphold the laws. Agreed. And the secretary of education also was not found liable. Correct, because under the statute, the secretary of education only had the authority over all school districts but the school district in Philadelphia. And so the court said the secretary of education doesn't have any say in any of this. Well, the court held that the AG actually did have a say. The AG had been advising whether the school district should comply. It had been telling the school district what to do. So the AG did have a say in that case. The AG advised the secretary of education, and the AG's decisions are binding on the secretary of education, not on the individual school districts. I thought it had been advising the school district. Through the secretary of education, and it was based on my remembering of the case, it was about three years before this issue even came up where the school district breached its agreement with its contractor. And so in that scenario, the court said the responsibility for enforcement actually lies with the school district, not with the secretary of education, and not with the attorney general. Because the attorney general doesn't, if I remember correctly, the attorney general opinions in that state require state agencies to actually follow the attorney general's opinion. Okay, you brought up Summit earlier. Okay, in Summit, the governor, the AG, and the district attorney, the defendants in that case, admitted an intent to enforce the criminal provisions. So that's different than in this case, isn't it? They admitted their stated intent that they are going to enforce the act which created penalties for abortion. So in that case, the attorney general did issue a letter to the district attorney saying this is what his interpretation of the criminal statute was, which the court did look at. But what's important about that case is in that case, the attorney general argued almost as similar to Attorney General Paxton that they were challenging, meaning the plaintiffs were only challenging the responsibilities such officers have in their status as state officials. And in that, the court disagreed and said that really goes to whether or not there's an ongoing and continuous violation of federal law. And here, because we have a state law that prevents the city from enforcing its ordinance, we have an ongoing and continuous violation. But the court in that case did not find that the civil provisions could be in – that it was waived with regard to the civil provisions. I agree with you, Your Honor. They did not because there was a private cause of action associated with those civil actions. In that case, if someone else can be, just like the landlords could bring that part of the suit, why isn't that analogous to this case? I'm trying to find a circuit that would go the other way and to see if we would create a circuit split if we all of a sudden announced, if we even had the power to announce that there's no longer a threat or a stated intent that you're going to do something in the future. So in that case – actually, let me start it this way. There is a threat of enforcement because there is a state law that prevents us from enforcing our ordinance, and it is coercive on the city. So the city's options are to violate the law and wait to see what the attorney general does, or do nothing and wait to see what the attorney general does. We don't think that's a threat for purposes of ex parte young jurisprudence. And it actually has to be a press release or a lawsuit or a demand letter. I would argue, Your Honor, that the cases when it comes to the threat of enforcement when we're talking about ex parte young really goes to whether or not the defendant will be impacted by the court's decision. So they're very similar. The threat of enforcement issue goes between both ex parte young and standing. Under ex parte young, it's focused on the defendant, and in standing, it's focused on the plaintiff. And if there is a declaration issued by Judge Barks that this law is invalid, the city can move forward with enforcement, and we will move to enforce our ordinance. And it will not, admittedly, not alleviate all of our injury, but it will take care of a significant portion so that we can move forward with enforcing. Counsel, but if we were to say there, if we believe that you actually needed a specific threat, but then we said, well, maybe we don't need that anymore. This may be Oklahoma is no longer good law, and Morris doesn't apply. And we could give you your world where you don't need a specific threat of enforcement. Wouldn't we be creating a circuit split if we were to do that? Based on our research, we have not found a case that is in the posture that this one is, in the sense that we have a state statute that is silent on enforcement and regulates the municipalities directly under a preemption theory. Okay, if we were to just out and out say there is no threat of enforcement requirement post Verizon, that would be a circuit split, wouldn't it? It could be argued as a circuit split. However, because of the state law issue, there's a chance it would not be considered a circuit split. Let me ask you this about Morris. There was counsel opposite that I thought that Morris, a panel decision from 2014, had adopted the plurality view in Oak Peloby of the connection requirement. So I'm looking at page 746 of Morris, where the panel says the required connection is not merely the general duty to see that the laws of the state are implemented, but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty. That's language from Oak Peloby. I thought it was language from the plurality in Oak Peloby, but the citation in Morris doesn't identify it as such. Okay, is it your view that our circuit has adopted that as the law? No, Your Honor. Okay, well, how – I mean, look, I guess I'm somewhat sympathetic to that view, but I just read the language from a panel opinion of our court from 2014. Ordinarily, we'd be bound by that, right? I see my time is run. May I respond to your question? Please do so. Okay. In that particular situation, there have been – the Air Evac case did not adopt and follow – After. Correct, which was after. Did not follow that. And actually, in that case, the court said to the extent that Ex Parte Young requires a state official to threaten or commence proceedings to enforce the unconstitutional act, the pervasive enforcement satisfies the test. And so it didn't attach to the threaten or commence language. What does that have to do with the fact that another case has talked about the problem since that? If we have a rule of orderliness, how can we – we have to still follow Morris, don't we? In Air v. Evac, I believe that the court recognized that Okabelobe, which is the basis of Morris, is not controlling on the court, if I remember correctly. But that's not an en banc case. We have to follow the earlier case, don't we, that says this is the test. The Morris opinion versus Okabelobe? Not Okabelobe. We put Okabelobe to one side, but Morris is the case that says the test. And even if that is the test of the circuit, we still win under that. The immunity is still waived. Why is that? Where is the demonstrated willingness of the attorney general to enforce this statute? It's an issue of the preemption issue. That's what it goes to. There is not going to be a situation where multiple cities are going to enforce or violate – I shouldn't say enforce – and violate this particular state law that preempts the city, a city from adopting or enforcing. And without that, we would be in a situation where we either violate the law or we stay silent. And in any case, we lose on the fact that we've had to either, again, violate state law or abandon our rights. And the cases don't require us to do that in order to move forward on an ex parte case. If I may conclude briefly, we'd ask that you affirm Judge Sparks' ruling on this issue because to do otherwise would allow the state to use its enforcement authority as a shield and a sword against municipalities. Thank you. Thank you. Thank you. A couple of quick points. There were a number of questions you asked opposing counsel about whether you could consider standing on an interlocutory appeal. The answer to that question is yes. As opposing counsel admitted, the question of a necessary connection under ex parte young and the case in controversy requirements of standing are, in her words, inextricably intertwined. And under this court's case in Escobar v. Monti, 895 F. 3rd, 387, 2018, issues that are inextricably intertwined with an interlocutory appealable issue are properly considered on appeal. Also, because this goes to the court's jurisdiction, you can consider it even if the court didn't raise it. This court did precisely that in Bertulli v. Independent Association of Continental Pilots, 242 F. 3rd, 290, and 2001 on a 23-F posture. So from the answers that opposing counsel gave, their claim of actual or threatened enforcement comes down to four unrelated lawsuits that General Paxton either brought or intervened in to establish that because he brought or intervened in four unrelated lawsuits that he is going to bring a case here. That just doesn't bear the weight in which she puts it. There's only actually one of those claims that was bringing a claim on preemption on the basis of state law. That is the Texas Association of Businesses case that involved the sick leave law. The rest were under the sick leave law. And so as a result, the rest of them just aren't preemption cases. And it's really hard to see how you can make the logical leap that because General Paxton intervened to support a private business association on a question about sick leave that he's going to do the same thing in a case involving fair housing regulations. They're just too disconnected. In fact, the record in this case would suggest that he wouldn't. She noticed that the state statute at question in this case, 250.07, was brought a week after Austin passed its ordinances. She sort of skipped a step in there. The day after that Austin passed its ordinance, a group of local landlords sued in a state court, which was removed to Judge Sparks, to assert that their municipal ordinance was preempted under a preexisting statute, section 214.903 of the local government code. They have not alleged, and I haven't seen any evidence that General Paxton got involved in that case at all. And they've given no reason to think that he is more likely to get involved in this case. Now, as I understand what you just said, the lawsuit was brought by the landlords based on a conflict with a preexisting state provision, similar to 250.07. State provision. That's before the state law in question here was passed. Right. And that case was dismissed because the law was insufficiently clear to preempt the local regulation. And 250.07 mooted the appeal because it was now very, very clear that the law was in fact preempted. But the only point is that General Paxton didn't get involved in that. There's no reason to think he's going to get involved here. And even if he did. He's kind of guessing. Right, we're guessing. Well, maybe he'll be involved. Maybe he won't. And that's the problem, is that the court's not supposed to guess. The city of Austin is supposed to demonstrate that Ken Paxton is willing and likely to enforce this provision, and they haven't done it. And because they haven't done it, this court should reverse Judge Sparks' ruling and dismiss either on the grounds of standing or on the grounds of sovereign immunity, whatever the court deems appropriate. Thank you. Thank you, counsel. We have your argument. This case is submitted.